(No. 26896.—

The People of the State of Illinois, Defendant in Error, *vs.* Joseph Chiafreddo *et al.,* Plaintiffs in Error.

*Opinion filed November 18, 1942.*

Hayden C. Covington, John F. Twomey, and Karl M. Milgrom, for plaintiffs in error.

George F. Barrett, Attorney General, and William T. Henderson, State's Attorney, (John T. Allen, John W. Unger, and Frank J. Meyer, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiffs in error were found guilty by a jury in the county court of Vermilion county of the offense of contributing to the dependency of their minor child. Judgment was entered on the verdict. Joseph Chiafreddo was sentenced to the Illinois State Farm for the term of one year. Ruth Chiafreddo was sentenced to the Illinois Women's Reformatory for the term of one year

To reverse the judgment of the trial court, plaintiffs in error contend: first, that the section of the statute on which the information was based violates the first and fourteenth amendments to the constitution of the United States, and certain sections of article II of the constitution of Illinois; second, that the regulation requiring children to salute the flag in the public school attended by the child of plaintiffs in error, contravenes the right of free speech and freedom of worship guaranteed by various sections of the constitution of Illinois; third, that when the statute under which plaintiffs in error were convicted, is properly construed, they are not guilty of a violation of the statute.

In order to properly consider the questions raised, it will be necessary to set out the two sections of the statute involved, which is entitled "An act to define and punish the crime of contributing to the dependency and neglect of children." (Ill. Rev. Stat. 1941, chap. 38, par. 100, *et seq.*) Section 1 of the act defines a dependent or neglected child, and in so far as here material, is in the following language:

"For the purposes of this Act a dependent and neglected child shall mean any male who while under the age of 17 years or any female who while under the age of 18 years, for any reason is destitute, homeless or abandoned; or dependent upon the public for support; or has not proper parental care or guardianship; or habitually begs or receives alms; or is found living in any house of ill fame or with any vicious or disreputable person; or has a home

which by reason of neglect, cruelty or depravity on the part of its parents, guardian or any other person in whose care it may be is an unfit place for such child; and any child who while under the age of ten years is found begging, peddling or selling any articles or singing or playing any musical instrument for gain upon the street or giving any public entertainments or accompanies or is used in aid of any person so doing."

Section 2 of the act provides a penalty for contributing to the dependency or neglect of a child. The material part of that section reads as follows:

"Any parent, legal guardian or person having the custody of a male under the age of 17 years or of a female under the age of 18 years, who shall knowingly or wilfully cause, aid or encourage such person to be or to become a dependent and neglected child as defined in section 1, or who shall knowingly or wilfully do acts which directly tend to render any such child so dependent and neglected, or who shall knowingly or wilfully fail to do that which will directly tend to prevent such state of dependency and neglect shall be deemed guilty of the crime of contributing to the dependency and neglect of children and on conviction thereof shall be punished by a fine of not more than $200.00 or by imprisonment in the county jail, house of correction or workhouse for not more than one year o'r both by such fine and imprisonment."

The information on which plaintiffs in error were tried, contains only one count. After alleging that they were the parents of Joseph Chiafreddo, Jr., it charged, in the language of the statute, that they did "unlawfully, knowingly and wilfully do acts which directly tend to render the said Joseph Chiafreddo, Jr., a dependent and neglected child, and knowingly, unlawfully and wilfully failed to do that which would directly tend to prevent such state of dependency and neglect by not then and there giving the said Joseph Chiafreddo, Jr., proper parental care and guardian-

ship and did then and there send said child to a public school and did then and there knowingly, unlawfully and wilfully advise and direct said child to refuse to salute the American flag, a lawful activity of said school as provided by the lawful authorities thereof." The jury by its verdict found plaintiffs in error "guilty in manner and form as charged in the information."

There is no substantial controversy as to the facts. The evidence offered by the People consists of the testimony of the teacher of the school attended by Joseph Chiafreddo, Jr., and that of the superintendent of the elementary schools, of which that school was a part, and the testimony of the assistant probation officer. From the testimony, it appears that Joseph Chiafreddo, Jr., attended school 37 days prior to October 23, 1941.

On that day the teacher noticed that during the morning exercises he did not join in the salute or pledge to the flag. He talked to the boy at recess and was told by him that he could not join in the pledge to the flag because it was an idol or some emblem to which he could not pledge because of his religious belief. The superintendent testified that he talked to the boy's mother, explaining the requirements, and that it was one of the ways in which they taught patriotism; that Mrs. Chiafreddo upheld her son in his refusal. The assistant truant officer testified that Mrs. Chiafreddo thereafter told him that her son was not allowed to go to school because he refused to salute the flag; that the teacher had sent him home for that reason. It appears from the evidence offered on behalf of the People that after it was discovered that he was not joining in the salute to the flag, the boy was expelled from school on that account. The People also called the child as a witness. He testified that he was expelled from school because he refused to join in the salute to the flag; that he had told his father and mother that he was sent home from school on that account; that his father and mother told

him "you do your own will;" that they told him he could salute the flag or not as he might decide for himself; if he wanted to go back to school and salute the flag it was agreeable to them, but that he could determine for himself whether he would do that. In this he was corroborated by his parents, who both testified as witnesses in the case. Defendants proved by a neighbor who was not a member of· the same religious sect that she had lived next door to plaintiffs in error for some five years; that she visited in the Chiafreddo home and knew the boy; that during those five years she had never known the child to be in want of clothes or food or to run around on the streets; that he had never been away from home for any length of time; that she had never seen him beg or do anything like that on the streets; that he had always been properly clothed; that he had never been in a home, which by reason of neglect, cruelty or depravity on the part of his parents or any other person, was an unfit place for the child; that he had never played any musical instruments on the streets; that he had never been destitute, abandoned or dependent upon the public.

Proper and timely motions were made for a directed verdict at the close of the People's evidence, and at the close of all. the evidence. By these motions the sufficiency of the evidence to sustain a conviction under the applicable statute was properly raised. By a motion in arrest of judgment the sufficiency of the information was challenged and that question was properly preserved. (*People* v. *Green,* 368 Ill. 242.) All such objections were denied and overruled by the trial court.

The constitutional questions raised are sufficient to give this court jurisdiction to review the judgment entered by the trial court. But, as we view the record, it will not be necessary to determine or to consider the constitutionality of the statute involved. In our judgment the only question necessary to be considered on this review is the sufficiency

of the information and of the evidence to support the conviction under the statute. It is the established rule of this court that a constitutional question will not be considered if the case can be decided without doing so. *People ex rel. Novotny* v. *Jarecki,* 372 Ill. 208; *People v. Adams,* 351 id. 79; *McEniry* v. *Tri-City Railway Co.* 254 id. 99; *Illinois Central Railroad Co.* v. *Chicago and Great Western Railway Co.* 246 id. 620.

It will be noted that the first part of the charge in the information is in the language of the statute. That part of the charge is that plaintiffs in error did "unlawfully, knowingly and wilfully, *do acts* which directly tended to render the said Joseph Chiafreddo, Jr., a dependent and neglected child, and knowingly, unlawfully and wilfully *failed to do that* which would directly tend to prevent such state of dependency and neglect by not then and there giving the said Joseph Chiafreddo, Jr., *proper parental care* and guardianship." Section 1 of the act above quoted defines a dependent and neglected child and section 2 imposes a penalty on the parents for contributing to such dependency and neglect. There is no attempt in the information to set out any acts which plaintiffs in error did, or failed to do or which tend to show a lack of *proper parental care* and guardianship.

The above portion of the charge in the information is a part of the language found in section 2. The gist of the charge is that plaintiffs in error did *acts* which tended to render the child dependent and neglected and *failed to do that* which would directly tend to prevent such state of dependency and neglect, by not giving him *proper parental care* and guardianship.

While this charge is stated in the language found in section 2, it is not sufficient to charge an offense under the constitution and statutes of this State. Section 9 of article II of the constitution provides that in all criminal prosecutions, the accused shall have the right to demand

the nature and cause of the accusation. Section 6 of division 11 of the Criminal Code (Ill. Rev. Stat. 1941, chap. 38, par. 716,) provides that it shall be sufficient if the offense is charged in the terms and language of the statute creating the offense, or so plainly that the nature of the offense may be easily understood by the jury.

Notwithstanding the provisions of the above statute, this court has repeatedly held that a charge in an indictment or information, even though in the language of the statute creating the offense, is not sufficiently specific and definite unless the statute, in creating the offense, particularly defines the acts constituting the offense created, so that the charge can be plainly understood.

In the case of *People* v. *Green, supra,* the court considered an information based on a statute which provided that "Any person who drives any vehicle with a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving." (Ill. Rev. Stat. 1941, chap. 95½, par. 145.) The information there before the court charged that the defendant did "drive a vehicle upon a public highway of this State, situated within the limits of the city of Chicago * * * with a wilful and wanton disregard for the safety of persons or property." It was argued that the information was sufficient because it charged the offense in the language of the statute creating it. The court in holding the information insufficient, quoting from *Johnson* v. *People,* 113 Ill. 99, said:

"No principle of criminal pleading is better settled than that an indictment for a mere statutory offense must be framed upon the statute, and that this fact must distinctly appear upon the face of the indictment itself. That it shall so appear, the pleader must either charge the offense in the language of the act, or specifically set forth the facts constituting the same. It sometimes happens, however, that the language of a statute creating a new offense does not describe the act or acts constituting such offense. In

that case the pleader is bound to set them forth specifically. This elementary rule is laid down in all standard works on criminal law, and is fully recognized by this court.—1 Wharton on Crim. Law, secs. 164, 372; *Kibs* v. *People,* 81 Ill. 599."

In *People* v. *Barnes,* 314 Ill. 140, in discussing the same question, the following language was used:

"It is not sufficient to charge an offense in the language of the statute, alone, where by its generality it may embrace acts which it was not the intent of the statute to punish. Such facts must be alleged that, if proved, defendant cannot be innocent. (31 Corpus Juris, p. 713.) The pleader must either charge the offense in the language of the statute or specifically set forth the facts constituting it. But where the statute creating a new offense does not describe the act or acts which compose it, the pleader is required to state them specifically. (*Johnson* v. *People,* 113 Ill. 99.) Section 9 of the bill of rights provides that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. The purpose of this guaranty is to secure to the accused person such specific designation of the offense laid to his charge as will enable him to prepare fully for his defense and to plead the judgment in bar of a subsequent prosecution for the same offense. *West* v. *People,* 137 Ill. 189; *People* v. *Clark,* 256 id. 14; *People* v. *Covitz,* 262 id. 514."

An examination of the statute on which the information in this case is based, discloses that while it is made an offense to "knowingly or wilfully do *acts* which directly tend to render any such child so dependent and neglected, or who shall knowingly or wilfully *fail to do that* which would directly tend to prevent such state of dependency and neglect," it nowhere defines what *acts* shall be considered as tending to render a child dependent and neglected, or *that* which will directly prevent such state of dependency

and neglect. The charge in the information is in the same language, *viz.:* that plaintiffs in error did *acts* which tended to render Joseph Chiafreddo, Jr., a dependant and neglected child and failed to do *that* which would tend to prevent such state of dependency and neglect, by not then and there giving the said Joseph Chiafreddo, Jr., *proper parental care and guardianship.* There is nothing in this section of the statute creating the offense, defining what *acts* shall be considered as directly tending to render a child dependent and neglected or what *acts* which the persons charged *fail to do* which directly tend to prevent such state of dependency or neglect. Nor is there anything in the statute which attempts to define what shall be considered as *proper parental care and guardianship.* Clearly, therefore, this is one of the cases where the statute creating the offense does not describe the act or acts which compose it. Where the statute does not define or describe the acts constituting the offense created, such acts must be set forth specifically in the information. (1 Wharton on Crim. Law, secs. 164, 372; *Johnson* v. *People, supra.*) The same rule was approved and followed in *People* v. *Brown,* 336 Ill. 257. While section 1 defines the conditions which are declared to render a child dependent or neglected, neither section of the act attempts to define what acts shall constitute contributing to such dependency or neglect.

Section 9 of article II of the constitution provides that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. While the general rule is that it is sufficient to state the offense in the language of the statute, this rule applies only where the statute sufficiently defines the crime. Where the statute creating the offense does not describe the act or acts which compose it, such acts must be specifically averred in the indictment or information. *People* v. *Lewis,* 319 Ill. 154; *Gunning* v. *People,* 189 id. 165; *Cochran* v. *People,* 175 id. 28; *Prichard* v. *People,* 149 id. 50; *McNair* v. *People,* 89 id. 441; *People* v. *Brown, supra; People* v.

*Barnes, supra; Johnson* v. *People, supra; Kibs* v. *People, supra.*

Here the statute creating the offense does not describe the acts composing it. This being true, it was necessary to aver in the information facts which would show *acts* on the part of plaintiffs in error, which directly tend to render their child a dependent and neglected child and facts which would show that they wilfully failed to do *that* which would directly tend to prevent such state of dependency and neglect. It is also necessary in an information, under this statute, to allege *facts* claimed to constitute a failure to give to the child *proper parental care and guardianship.* The charges in the information were therefore wholly insufficient.

The additional charge in the information is that plaintiffs in error "did then and there send said child to a public school and did then and there knowingly, unlawfully and wilfully advise and direct said child to refuse to salute the American flag."

Section 1 defines a dependent and neglected child. Section 2 only relates to the offense of contributing to such dependency or neglect, hence we must refer to section 1 to determine what constitutes a dependent and neglected child in order to determine the offense created by section 2. There is nothing in section 1 of the act defining dependency and neglect from which it can be said that a child in a public school who refuses to salute the American flag shall be a dependent or neglected child, within the language of section 1. This part of the information therefore did not charge an offense, as defined in the statute on which the information was based. It is nowhere provided in the statute that the failure of a child to salute the flag shall constitute such child either dependent or neglected, as defined in the act.

From what has already been said, it is clear that there is no proof in the record whatever of any offense under section 2. All the record shows is that the child refused

to salute the flag because it was contrary to his own religious belief and that of his parents. The evidence was wholly insufficient to prove any offense under the statute without regard to the fact of whether such crime was properly charged in the information.

For the insufficiency of the evidence to establish the crime created by the statute, the judgment will have to be reversed. The information being wholly insufficient to charge an offense under the statute, the cause will not be remanded.

*Judgment reversed.*